IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JESSICA WEAVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-01384 (AJT-IDD) |
| | ) | |
| TROY MEINK, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In 2012, at a time when the Air Force was gravely in need of dentists of Plaintiff's specific qualifications, the Air Force recruited the Plaintiff, a practicing dentist then age fifty, to leave her practice and join the Air Force Dental Corps. As an inducement, the recruiting officer expressly promised with specific official authorization that, when Plaintiff reached the mandatory retirement age of sixty-two, she would receive retirement benefits despite her not having served the required twenty years of service at that point. Based on that promise, the Plaintiff left her dental practice and joined the Air Force. Nevertheless, relying on a change in policy and implementing statutory amendments, the Air Force reneged on its promise and refused to provide the promised retirement benefits when Plaintiff reached age sixty-two in 2024, even though the Air Force had made the decision, despite this change in policy, to continue providing retirement benefits based on the same promise Plaintiff has received to already-retired service members with less than twenty years of service, recognizing that not to do so would constitute "an injustice."

In this action, Plaintiff brings a single claim alleging that the denial of her retirement eligibility by the Air Force Board for Correction of Military Records ("AFBCMR" or the "Board") was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C.

1

§ 551 *et seq*. The parties have filed cross motions for summary judgment based on the administrative record before the AFBCMR. [Doc. Nos. 13, 16]; (the "Motions"). The Court held a hearing on April 8, 2026. [Doc. No. 23], following which it took the Motions under advisement. For the reasons stated below, the decision to deny Plaintiff the retirement benefits that she was promised constituted an injustice and was therefore arbitrary and capricious, and Plaintiff's Motion is **GRANTED**, and Defendant's Motion is **DENIED**.

## I.  BACKGROUND

The administrative record contains the following:[1]

In 2012, after seventeen years operating her own dental practice, Plaintiff joined the Air Force Dental Corps at the age of fifty with rank of Lt. Colonel. [Doc. No. 14] at 5, 7–9.[2] During their extended correspondence prior to her commissioning, Plaintiff's recruiter expressly promised her that, when she reached the mandatory retirement age of sixty-two, she would receive retirement benefits despite the fact that she would not have served the required twenty years before that point.[3] [Doc. No. 17] at 7 (citing [AR] at 105). The recruiter was officially authorized to make this promise because at that time the Air Force was gravely in need of dentists of Plaintiff's specific qualifications. *Id*. Despite this promise, Plaintiff was "concerned

---

[1] In this APA case, the record that Court may consider is limited to the administrative record that was before the defendant agency in the challenged administrative proceeding. 5 U.S.C. § 706; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). That record has been submitted as a single exhibit. *See* [Doc. No. 11-1]; "[AR]").

[2] As was common in connection with the recruitment of mid-career officers because of their specialized skills, Plaintiff upon her commissioning (referred to by the parties as "accession") was credited with sixteen years of "constructive" service in order to justify her starting rank of Lieutenant Colonel but which would not be counted for the purposes of retirement eligibility.

[3] At the time of Col. Weaver's commissioning to the Air force, her eligibility for retirement benefits was governed by two relevant authorities: first, 10 U.S.C. § 1251(a) ("Section 1251") provided in relevant part that that "[u]nless retired or separated earlier, each regular commissioned officer … shall be retired on the first day of the month following the month in which the officer becomes 62 years of age." Second, Air Force Instruction No. 36-3203 provided that "[u]nless granted a waiver under some provision of law, to be eligible for a non-disability [active-duty] retirement, commissioned officers, warrant officers, and enlisted members of the active or [Air Reserve Component] must complete 20 years of total active federal military service." U.S. Dep't of Air Force, Instruction 36-3203 ¶ 3.1.1 (July 8, 2025); https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-3203/dafi36-3203.pdf.

about the finer details of commissioning" and therefore insisted upon and received (via her recruiter) written confirmation from two senior representatives of the Air Force Personnel Center that she would be eligible for retirement at age sixty-two "regardless of … Total Active Federal Military Service" (viz- regardless of having served fewer than twenty years). [Doc. No. 14] at 8–9 (citing [AR] at 17–18, 29–30, 105–11); *see also* [Doc. No. 17] at 7. Central to Defendant's position in this case is that Plaintiff, in connection with her recruitment and the promises she received, signed and initialed various sections of an acknowledgment form (form "AFRS 1430"), including Section X which stated that "I fully understand that under current laws it will not be possible for me to complete sufficient active service to qualify for active duty retirement." [Doc. No. 14] at 23; [AR] at 82.

In 2018, Plaintiff had the opportunity to enroll into a newly-instituted "Blended Retirement System" ("BRS"), which was designed for servicemembers who would be separated before they qualified for full retirement benefits; however, in light of the assurances she had received prior to her commission, Plaintiff decided not to join the BRS program. [Doc. No. 14] at 23; [AR] at 4, 101.

Plaintiff turned sixty-two in 2024, but in 2022 obtained an "age waiver" from the Air Force Secretary that extended her Mandatory Separation Date ("MSD") to February 28, 2026.[4] [AR] at 4, 8. Due to health issues, she was placed on a form of temporary medical leave from sometime in 2024 until February 16, 2025. *Id.* at 4. Overall, following her commission in 2012, she has honorably served in the Air Force for over thirteen years, achieving the rank of full Colonel.

---

[4] This MSD was still in effect at the time the Motions were filed. While the parties have not indicated whether her separation pursuant to that MSD has or could impact the AFBCMR's reasoning or Plaintiff's eligibility for relief, the Court assumes, for purposes of this motion, that she remains eligible for subsequent age waivers.

On December 26, 2019, approximately seven years into Plaintiff's service, James, N. Stewart, the Official Performing the Duties of the Under Secretary of Defense for Personnel & Readiness ("OUSD P&R"), issued a memorandum (the "Stewart Memo"), which directed relevant military personnel offices to "immediately stop processing all pending [and future] retirement actions . . . for officers who have less than 20 years of active service" and to "ensure that potential officers are not recruited with assertions suggesting that they may be eligible for non-disability retirement with less than 20 years of service." *Id.* at 125. The policy change reflected in the Stewart Memo was based on a legal opinion issued by the Department of Defense's Office of General Counsel on November 6, 2019, which recommended reversing the military's longstanding interpretation of 10 U.S.C. § 1251(a) ("Section 1251") to permit the granting of retirement benefits to servicemembers with less than twenty years of service, as it promised it would do for Plaintiff. [Doc. No. 14] at 15 (citing [AR] at 60).

In March 2020, the OUSD P&R, ostensibly in recognition of the unfairness to those service members who had been promised retirement benefits under the previous interpretation of Section 1251, issued another memorandum directing the military personnel offices to correct the records of any officers who had *already* retired under Section 1251 with less than twenty years to ensure that they continued to receive retirement benefits "for removal of an injustice" (the "Second Memo"). [Doc. No. 14] at 15–16; [AR] at 60 (stating in part that "Many of these officers have been drawing retired pay for years . . . . Revocation of their retirement now, and collection of pay received as a military retiree, would be a substantial personal and financial hardship"). Two months later, the Secretary of the Air Force issued to the AFBCMR a "Group Request for Removal of an Injustice" based on a template provided by the OUSD P&R ([AR] at 69–71), which the AFBCMR granted and thereby corrected hundreds of retiree records to

4

reinstate their retirement benefits, but because Plaintiff had not yet retired, this action did not apply to her. *See* [Doc. No. 14] at 16 (citing [AR] at 160–61).

The 2021 National Defense Authorization Act ("NDAA"; Pub. L. 116-283) passed by Congress over a presidential veto on January 1, 2021, conformed Section 1251 to the Stewart Memo by amending subsection (a) to state that any officer "shall be retired *or separated* . . . [when] the officer becomes 62 years of age" (emphasis added), and adding subsection (e), which states, in relevant part, that when an officer reaches age sixty-two, "[i]f the officer has at least 6 but fewer than 20 years of creditable service, the officer shall be separated." 10 U.S.C. § 1251(e)(1)(A). Subsection (e) also carved out an exception whereby "a regular commissioned officer who was added to the retired list before the date of the enactment of the [2021 NDAA . . . shall be retired," thus also conforming Section 1251 to the Second Memo, which, in effect, preserved the retirement benefits for already retired service officers but excluded the Plaintiff (who had not yet retired). *See id.* § 1251(e)(2).

Plaintiff learned of these changes affecting her promised retirement benefits sometime before January 3, 2022, on which date she wrote to her congressman with her concerns, who opened an inquiry and the Air Force confirmed that she was ineligible for retirement benefits until she served the full twenty years. [AR] at 51–54.

On December 2, 2022, she filed a request with the AFBCMR that her service records be corrected to reflect that once she reaches the age of sixty-two, she will be retired, rather than separated. *Id.* at 14. The Air Force Manpower, Personnel, and Services Directorate provided to the AFBCMR an advisory opinion on Plaintiff's application that recommended denying the application, stating that "[w]hile we are sympathetic to the inequities articulated by Col. Weaver's counsel and concede that the law was changed after her appointment, Col. Weaver

signed a statement acknowledgment that it would not be possible to complete sufficient active service to qualify for an active duty retirement." *Id.* at 80. Plaintiff, through counsel, responded to the advisory opinion in writing. *Id.* at 9. The Board denied Petitioner's request for correction. *Id.* at 6–12.

In support of its denial, the Board expressly concurred with the rationale and recommendation in the advisory opinion, and stated that it "is without authority to grant the applicant a service retirement upon age 62 with less than twenty years of service contrary to 10 U.S.C. § 1251."[5] [AR] at 10. The Board also noted that Col. Weaver remained eligible to eventually obtain retirement benefits by obtaining a further age waiver that would allow her to continue to work and eventually obtain retirement benefits after twenty years of service in 2032; and that even without a deferment, she was eligible to receive separation benefits including Transitional Assistance Management Program benefits.[6] *Id.* at 10, 80.

Plaintiff moved the AFBCMR to reconsider its decision, submitting materials including an affidavit from her recruiter and an AFBCMR decision granting retirement to an already-retired airman, which she contended supported her position (Case No. BC-2020-02644). [AR] at 2–3. However, her reconsideration request was denied for substantially the same reasons as her initial petition, rendering the Board's denial final. *Id.* at 1, 4. The Board's denial upon reconsideration stated that "[t]he Board remains unconvinced the evidence presented demonstrates an error or injustice . . . .While the Board empathizes with the applicant, OUSD

---

[5] Given both parties' acknowledgement of the Board's authority to grant relief contrary to statue through its equitable powers, discussed further herein, this statement appears to be plainly incorrect.

[6] Retirement benefits offer greater pay and more benefits than separation benefits. *Compare* U.S. Department of Defense, *Involuntary Separation Pay (Non-Disability),* https://militarypay.defense.gov/Benefits/Separation-Pay/ (last accessed July 20, 2026) *with* U.S. Department of Defense, *Blended Retirement System: Defined Benefit,* https://militarypay.defense.gov/Portals/3/Documents/BlendedRetirementDocuments/Fact%20Sheet-Defined%20Benefit.pdf?ver=2017-12-08-135008-747) (last accessed July 20, 2026)*.*

P&R in Dec 19 directed the Military Departments to stop processing regular retirements for officers with less than 20 years of service . . . ." *Id.* at 4.

Plaintiff brought this action on August 22, 2025. *See* [Doc. No. 1].

## II. LEGAL STANDARD

In APA cases, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Shipbuilders Council of Am. V. U.S. Dep't of Homeland Sec.*, 770 F.Supp.2d 793, 802 (E.D. Va. 2011). Courts must "hold unlawful and set aside agency action, findings, and conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Wilhelmus v. Geren*, 796 F.Supp.2d 157, 160 (D.D.C. 2011) (quoting 5 U.S.C. § 706(2)(A)) (cleaned up); *see also Portner v. McHugh*, 395 Fed.Appx. 991, 992 (4th Cir. 2010) (an agency decision is invalid when it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence.").

The Secretary of the Airforce, acting through the AFBCMR, is authorized to correct any Air Force military record when she "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This removal of injustice is the "principal function" of the military boards of correction like the AFBCMR. *Haselwander v. McHugh,* 774 F.3d 990, 998 (D.C. Cir. 2014). Those boards' decisions are reviewed according to an "unusually deferential" version of the arbitrary and capricious standard whereby a court must uphold a decision "if it is supported by substantial evidence or such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Drenning v. Toro*, 2024 WL 4206076, at *2 (E.D. Va. Sept. 14, 2024).[7] However, even under this unusually deferential standard, "when a military

---

[7] Plaintiff notes that some courts have carved out exceptions to this heightened standard; however, even the courts that have done so have generally recognized that "personnel decision[s]" (which clearly describes the challenged decision

records correction board fails to correct an injustice clearly presented in the record before it, [such decision] is arbitrary and capricious." *Haselwander,* 774 F.3d at 996; *see also Harrison v. Kendall*, 670 F. Supp. 3d 280, 284 n.1 (E.D. Va. 2023).

## III. DISCUSSION

Plaintiff argues that given the officially sanctioned assurances when she joined the Air Force, the AFBCMR's refusal to exercise its equitable authority to declare her eligible for retirement, was an injustice and therefore arbitrary and capricious, particularly in light of its decision to honor the similarly promised retirement benefits to the already-retired officers. Defendant argues that the AFBCMR's decision was consistent with the plain meaning of Section 1251, as amended by the 2021 NDAA, and with Plaintiff's acknowledgment in her signed AFRS 1430 form. Based on its review of the entire administrative record, the Court concludes that the AFBCMR's decision was arbitrary and capricious.

As an initial matter, the parties agree that the AFBCMR's decision was consistent with Section 1251 as amended by the 2021 NDAA, which governed at the time of Plaintiff's mandatory retirement. They disagree, however, regarding what effect the current version of Section 1251 has on Petitioner's APA claim. In that regard, Plaintiff contends that whether the AFBCMR's decision was consistent with the current version of Section 1251 is irrelevant given the AFBCMR's demonstrated ability to correct her record through its equitable powers, as it did with respect to the already-retired officers who were given the same promise of retirement benefits she received. [Doc. No. 14] at 21 ("[T]he AFBCMR corrected the [already-retired] members' records *based purely on equitable grounds* to remove the injustice") (citing [AR] at 222).

---

here) are firmly outside that exception. *See Krzywicki v. Del Toro,* 755 F. Supp. 3d 1, 11 (D.D.C. 2024) (citing *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014).

Because Defendant does not dispute that the Board has the equitable power to provide to Plaintiff her requested relief, the parties' cross motions reduce to whether there was "substantial evidence or such relevant evidence as a reasonable mind might accept as adequate" to support the Board's conclusion that Plaintiff had not suffered an injustice.[8] *Drenning v. Toro*, 2024 WL 4206076, at *2 (E.D. Va. Sept. 14, 2024).

The Board's decision to deny Petitioner's application was based on the following justification: (1) that the Board "is without authority to grant the applicant a service retirement upon age 62 with less than twenty years of service contrary to 10 U.S.C. § 1251." [AR] at 10; (2) that Plaintiff signed AFRS 1430 acknowledgement form; (3) that Plaintiff was eligible for separation benefits; and (4) that Plaintiff remained eligible to obtain an additional age waiver to work beyond her mandatory separation date, which would allow her ultimately to obtain full retirement benefits, albeit in 2032. [AR] at 10. None of these reasons, either individually or collectively, support the Board's conclusion that Plaintiff did not suffer an injustice, as the Board concluded would be inflicted on already retired officers who received the same promise as she did.

With respect to the first listed justification, the parties agree, contrary to the Board's statement in support of its decision, that it does have the ability through its equitable powers to grant Plaintiff's request for retirement benefits. As to the second justification, based on

---

[8] Both parties attempt to invoke other legal principles in favor of their positions. Plaintiff argues that given her reasonable and detrimental reliance on the clear promises of retirement, Defendant should be equitably estopped from reneging on these promises ([Doc. No. 14] at 24), but both parties acknowledge that equitable estoppel is almost never available against the federal government. *Id.*; *see also Volvo Trucks of N. Am., Inc. v. United States*, 367 F.3d 204, 211-12 (4th Cir. 2004). Defendant also contends that granting Plaintiff relief would violate both the Appropriations Clause of the Constitution (Art. I, § 9, cl. 7) and the Unmistakability Doctrine, which holds that "[c]ontractual arrangements remain subject to subsequent legislation by the presiding sovereign."[8] *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 147 (1982). However, both of these contentions go to the effect of the 2021 NDAA as discussed above, and neither one divests the AFBCMR of its equitable authority to grant relief contrary to statute.

Plaintiff's initialing Section X of AFRS 1430,[9] which the Board appears to have heavily relied on, the Board concluded that "[Plaintiff] understood she would not be able to complete sufficient service to qualify for retirement." [AR] at 10. But denying Plaintiff's request based on her acknowledged statement in that form is difficult to reconcile with the Board's other finding that the plaintiff "was told and she believed she would be entitled to retired pay upon reaching age 62[,]" (*Id.* at 4) (emphasis added), as well as the uncontested evidence presented through Plaintiff's recruiter, who affirmed that "[the Plaintiff's] situation was unique and her qualifications were highly sought by the Air Force . . . . [and the Recruiter] was able to recruit the [Plaintiff] with the offer of a prorated retirement and associated benefits even though she would not reach 20 years of service," and that although she signed the AFRS 1430, both she and her recruiter "understood at the time this form was executed that Dr. Weaver would be eligible for a prorated retirement based upon the confirmation [they] received from the Pentagon and USAF Personnel Center." *Id.* at 105. In substance, the Board's decision is based on the implicit and false conclusion that the relied upon section of AFRS 1430 establishes that Plaintiff understood that the recruitment incentives the Air Force was offering were illusory, unenforceable, and worthless promises.

In any event, even if the relied-upon section of the AFRS 1430 is accepted at face value, it only reinforces why she insisted on the Air Force's explicit written confirmation that she would receive retirement benefits at age 62 "regardless" of what requirements otherwise applied so that it was clear that the requirements "under current law" were effectively waived as to her.

---

[9] The relied upon part of Section X states that Plaintiff "fully understand[s] that under current laws it will not be possible for me to complete sufficient active service to qualify for active-duty retirement." It is worth noting that the relied-upon Section X of AFRS 1430 was part of an extensive form, with some sections crossed out and other sections initialed, with at least one initialed section not reflecting the entirety of the parties' clear expectations at the time of Plaintiff's commission, specifically, Section III setting a term of only 36 months which, while technically accurate, bears no relation to the full length of the parties' intended term of service. [AR] at 81.

That view is fully supported by the Air Force's acknowledgement that Plaintiff's recruiter was officially authorized to, in effect, waive those aspects of the current law that would have precluded her eligibility for retirement benefits upon her mandatory retirement at age sixty-two, a waiver that was not only officially authorized but also a waiver that was authorized by then-applicable regulations[10] and the Air Force's understanding of what was permitted under Section 1251. As also reflected in Plaintiff's recruiter's affidavit there was "zero doubt" Plaintiff would not have joined the Air Force but for this expectation. *Id.* at 105. And the arbitrary nature of the Board decision in reliance on AFRS 1430 is underscored by the notable absence of any suggestion in the record that the already retired service officers who have been granted the relief Plaintiff requests did not similarly sign AFRS 1430 or a comparable form acknowledging "current law."

The remaining reasons given by the Board to deny Plaintiff's request relate to Plaintiff's ability to mitigate the harm she suffered as a result of the Air Force's policy change. In that regard, the Board concluded in substance that any injustice the Plaintiff experiences is not as great as that which would be experienced by already retired service members who had received the same promise Plaintiff received, she could qualify for retirement benefits by seeking an age waiver that would allow her to work until 2032, at which point she would be in her seventies, and she would qualify for separation benefits, as opposed to retirement benefits.[11]

---

[10] *See* [AR] at 54; *see also* U.S. Dep't of Air Force, Instruction 36-3203 ¶ 3.1.1 (July 8, 2025); https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-3203/dafi36-3203.pdf ("Unless granted a waiver under some provision of law, [airmen] must complete 20 years of total active federal military service" to qualify for retirement).

[11] While the Board stated that Plaintiff "can serve beyond age 62 with an [age waiver]" ([AR] at 4), it did not give specific assurances that Plaintiff would receive a waiver as a matter of course (in particular, that she would remain eligible after separating pursuant to her February 2026 MSD, as she appears to have done). Also notably, the Board did not contend that Plaintiff was eligible to join the Blended Retirement System, as that option evidently expired before the Stewart Memo was issued in 2019. [Doc. No. 14] at 26 n. 7.

11

The Board's equitable authority is intended to be exercised based on an individual's particular circumstances. *See Caddington v. United States*, 178 F. Supp. 604, 607 (Ct. Cl. 1959) ("[E]quity regards substance rather than form.").[12] The Board's justification for Plaintiff's treatment relative to already retired service officers is based solely on general assumptions concerning the relative degrees of the harm to be experienced by already retired service members as compared to those who have not yet retired. Likewise, with respect to its consideration of their respective abilities to mitigate that harm, the Board failed to consider Plaintiff's particular circumstances and how the actual impact on the Plaintiff compares to the range of experiences among the already retired for whom relief was granted, despite their having retired as late as November 2019. *See* [AR] at 68. In that regard, the record is undisputed that the Plaintiff since 2024 has suffered from medical conditions that would preclude her continued service and underscores the hardship to be experienced by the loss of her promised retirement benefits. That hardship may be more or less than those experienced or to be experienced by those already retired service members that the Board granted relief to but it is entirely arbitrary for the Board to simply assume, as it implicitly did, that the Plaintiff is not as seriously impacted as others that the Board has protected against an "injustice."[13]

This lack of consideration for Plaintiff's particular circumstances is also reflected in the Board's consideration of other Board decisions the Plaintiff references. For example, the Board distinguished Col. Weaver's case from AFBCMR case no. BC-2020-02644, solely on the

---

[12] The record does not contain any legislative history materials related to the 2021 NDAA that would establish any legislative intent or considerations other than the rationale spelled out in the Stewart Memo. And neither the Second Memo, the Board's decisions or any other document in the record suggests that it would be infeasible or overly burdensome to honor the promises made to both groups.

[13] Defendant argues that "even if it would have been better policy for Congress to include an exception for servicemembers like Plaintiff, courts are "not at liberty to rewrite the statute to reflect a meaning we deem more desirable." [Doc. No. 17] at 15 (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008)). But Plaintiff does not seek a rewriting of the statute only that the Board properly exercise its admitted equitable powers to correct an injustice.

12

grounds that the applicant in question had retired before the Stuart Memo, without any consideration of how the hardship to be experienced by the Plaintiff compared with that applicant's situation, and again, without any suggestion that this service member had not signed the AFRS1430. Similarly, the Board found no support for Plaintiff's request in a 2011 case decided by the ARBCMR (the Army's equivalent of the AFBCMR (Docket No. AR20110010056), in which the Army had informed the widow that her late husband, an Army reservist, was eligible for a death gratuity and mortuary benefits, she paid for funeral arrangements with that expectation, and then was told later told that her husband was not eligible for those benefits. The Army Board found that the reservist was not entitled to the claimed benefits, but nevertheless exercised its equitable authority to grant his widow's request in light of her detrimental reliance. [AR] at 143, 144,147. In its decision on Plaintiff's request for reconsideration, the AFBCMR distinguished Col. Weaver's case from this case on the grounds that Plaintiff is not a reservist. *Id.* at 5. But this distinction appears to have no relationship to whether the Plaintiff suffered an injustice relative to this applicant and the Board did not appear to give any weight, as the Army did for that applicant, to the Plaintiff's detrimental reliance, which likely exceeded that of the applicant in that case by a substantial margin (at least in financial terms), given Col. Weaver selling her dental practice, reorienting her career, and dedicating thirteen years to the Air Force, which her recruiter said he had "zero doubt" the Plaintiff would not have done but for the expectation of retirement. *Id.* at 105.

In sum, as discussed above, the record before the AFBCMR reflects (1) a clear, unambiguous, and duly authorized promise on the part of Defendant; (2) significant detrimental reliance on the part of the Plaintiff; (3) Defendant's violation of that promise without any

13

identified compelling reason to do so; and (4) a rationale undercut by its treatment of other service members who received the same promise as Plaintiff.

For the above reasons, the Board's denial of Plaintiff's promised retirement benefits constituted a clear injustice and under the applicable deferential standard of review appliable to Board's decisions, the Board's decision to deny her request for retirement benefits was arbitrary and capricious. It should therefore be vacated and set aside, and the requested relief granted. *See Harrison v. Kendall*, 670 F. Supp. 3d 280, 284 n.1 (E.D. Va. 2023) (The appropriate remedy for a successful APA challenge to a military board's decision is the vacatur and remand of that decision).

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion [Doc. No. 13] be, and the same hereby is, **GRANTED**; and Defendant's Motion [Doc. No. 16] be, and the same hereby is, **DENIED;** and it is further

**ORDERED** that the Board's decision to deny Plaintiff's request to correct her record and reinstate her eligibility for her retirement benefits is **VACATED** and **REVERSED** and this action is **REMANDED** to the Defendant and the Board for correction of Plaintiff's record and to reinstate her retirement benefits, as promised.

The Clerk is directed to forward copies of this order to all counsel of record and to enter judgment in favor of Plaintiff pursuant to Fed. R. Civ. P. 58.

_____ /s/ _____
Anthony J. Trenga
Senior U.S. District Judge

July 23, 2026
Alexandria, Virginia